**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delora J. Quinn,  <br>   Plaintiff,  <br>vs.  <br>Carolyn W. Colvin, Commissioner of the Social Security Administration,  <br>   Defendant. | CIV 12-1450-PHX-MHB  <br>**ORDER** |

Pending before the Court is Plaintiff Delora J. Quinn's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

On June 29, 2009, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, alleging disability beginning April 10, 2009. (Transcript of Administrative Record ("Tr.") at 106-12, 17.) Her application was denied initially and on reconsideration. (Tr. at 48-59, 17.) On June 23, 2010, she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 60-61, 17.) A hearing was held on February 3, 2011. (Tr. at 32-47.) On February 15, 2011, the ALJ issued a decision in which he found that Plaintiff was not disabled. (Tr. at 14-31.) Thereafter, Plaintiff requested review of the ALJ's decision. (Tr. at 12.)

1   The Appeals Council denied Plaintiff's request, (Tr. at 1-6), thereby rendering the
ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review
of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

    (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 10, 2009 – the alleged onset date. (Tr. at 19.) At step two, he found that Plaintiff had the following severe impairment: bipolar disorder. (Tr. at 19-20.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 20-21.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has the capability of performing the basic mental demands of simple, unskilled work."[1] (Tr. at 21-25.) The ALJ determined that Plaintiff was unable to perform any past relevant work, but based on her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from December 22, 2006, through the date of his decision. (Tr. at 26.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints; (2) failing to properly weigh medical source opinion evidence; (3) failing to provide legally sufficient reasons for discrediting her non-expert letters; and (4) failing to utilize any vocational evidence or testimony to determine that Plaintiff is able to work in other occupations. Plaintiff requests that the Court remand for determination of benefits.

### A. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so. Specifically, Plaintiff states that the "record does not substantially support the ALJ's determination that Plaintiff was not disabled based on her daily activities, specifically ignoring Plaintiff's testimony and stating that her statements were 'not credible.'" Plaintiff contends that the "ALJ based his decision on social activities, rather than transferrable activities that would indicate Plaintiff could perform substantial gainful activities ..., and ALJ made no specific findings to support his conclusions."

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

At the administrative hearing, Plaintiff testified that she was 55 years of age and had completed one year of college. (Tr. at 35.) Plaintiff lived with her husband in a town home and had worked as a housekeeper, companion, and private duty nurse from 1981 until she could no longer work in April of 2009. (Tr. at 36.) Plaintiff explained that she could no longer work due to her inability to follow orders or perform her tasks because of her depression, anxiety, and other symptoms related to her bipolar disorder. (Tr. at 37.)

Plaintiff was diagnosed with Bipolar disorder in 1977. (Tr. at 37.) She described her episodes of mania and psychosis as wandering the streets, having visions of grandeur, thinking she was greater than she was and invincible, and becoming hyper and obsessive.

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1  (Tr. at 41.) In addition to her alleged inability to follow simple directions and depression, Plaintiff testified that she was unable to look for work because she had not been released by her psychiatrist to do so. (Tr. at 42-43.)

Plaintiff stated that during most days she lays in bed tossing and turning, but sometimes is able to get up and watch some television or do minimal amounts of reading. (Tr. at 43.) Plaintiff also testified that she drives very seldom, goes shopping with her husband, and goes to church, with little other social interactions. (Tr. at 43-44.) Plaintiff only shops with her husband and he does the cooking; she attends bible study with the limitations described above, and attends worship services; she does not lead any activities or manage any activities or funds. (Tr. at 45.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made extensive credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding her pain and limitations. Although the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. at 19-22.)

In his evaluation of Plaintiff's testimony, the ALJ first referenced the objective medical evidence finding that said evidence did not support Plaintiff's allegations of disabling symptoms and limitations. (Tr. at 22-25); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible). Citing to medical records from Marcel A. Van Eerd, Ph.D., the discharge summary from Banner Thunderbird Medical Center, and progress/treatment notes from Southwest Network, the ALJ documented Plaintiff's mental health treatment beginning in the 1970s, and determined that, generally, since April of 2009 Plaintiff's global assessment of

functioning score has consistently been rated between 60-68 – which is indicative of mild symptoms. (Tr. at 22, 293-98, 228-46, 255-92, 360-74, 460-509.) The ALJ found that this evidence "greatly damages" Plaintiff's credibility since it revealed that her symptoms are well controlled with medication. (Tr. at 22.)

The ALJ then discussed, in detail, the opinions of Dr. Van Eerd; Kathleen Smerko, Psy. N.P.; Brent Geary, Ph.D.; Marshall Northington, Ph.D.; and Jonathan Zuess, M.D. (Tr. at 22-24, 293-98, 431-34, 381-87, 435-448, 402-05.) After analyzing the findings of each physician, the ALJ concluded,

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet, a review of the record in this case reveals no restrictions recommended by the treating doctor. In fact, time after time, the treating source indicates minimal psychological restrictions and limitations, by the assignment of GAF scores in the 60's and 70's. The lack of support from the claimant's treating physicians further diminishes the claimant's credibility.

(Tr. at 24.)

In addition to the objective medical evidence used to support his credibility analysis, the ALJ also found that evidence of Plaintiff's daily activities, as well as, inconsistencies in the record "diminish[ed] the claimant's credibility." (Tr. at 20, 22, 25.) "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603). "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." Id. (internal citation omitted). "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." Id.

Regarding the inconsistencies in the record detracting from Plaintiff's credibility, the ALJ noted that although Plaintiff alleged having symptoms of bipolar disorder since the 1970s, and indicated that she has not always received treatment or taken medication since

1 that time, Plaintiff's condition never prevented her from attending college courses or
2 working. The ALJ found this fact consistent with the medical evidence and "strongly
3 suggests" that her condition would not currently prevent work. (Tr. at 25.)

4 As to Plaintiff's daily activities and social functioning, the ALJ stated, "[i]n activities
5 of daily living [and social functioning], the claimant has mild restriction." (Tr. at 20.)
6 Specifically, the ALJ found that Plaintiff reported being able to cook simple meals, perform
7 household chores, take care of a pet, go shopping, perform all activities associated with
8 personal care, and drive a vehicle. (Tr. at 20, 22, 161-68, 293-98, 460-509.) According to
9 the record, the ALJ also found that Plaintiff assists her mother with household tasks,
10 maintains a close relationship with her husband and has regular visits with friends and family
11 members, and attends various church functions during the week. (Tr. at 20, 22, 45, 160-68,
12 381-87, 293-98, 460-509.) While not alone conclusive on the issue of disability, an ALJ can
13 reasonably consider a claimant's daily activities in evaluating the credibility of her subjective
14 complaints. See, e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008)
15 (upholding ALJ's credibility determination based in part of the claimant's abilities to cook,
16 clean, do laundry, and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676,
17 680-81 (9th Cir. 2005) (upholding ALJ's credibility determination based in part on the
18 claimant's abilities to cook, clean, shop, and handle finances).

19 In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
20 allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
21 are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
22 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
23 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
24 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
25 the Court finds no error.

26 \\\
27 \\\
28 \\\

**B.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ did not articulate legally sufficient reasons for concluding that the report of Plaintiff's examining psychologist, Dr. Northington, should be "given little weight" and that his opinion was "without substantial support from the other evidence." Plaintiff also contends that the ALJ gave Dr. Northington's report little weight due to the circumstances and "context in which it was produced," which Plaintiff asserts is not a legitimate basis for rejecting the medical report.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle, 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester, 81 F.3d at 830. Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. See id. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. See id. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. See id. at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. See id. at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. See id. at 830-31.

1  The opinion of a non-examining physician is not itself substantial evidence that
2  justifies the rejection of the opinion of either a treating physician or an examining physician.
3  See id. at 831. "The opinions of non-treating or non-examining physicians may also serve
4  as substantial evidence when the opinions are consistent with independent clinical findings
5  or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).
6  Factors that an ALJ may consider when evaluating any medical opinion include "the amount
7  of relevant evidence that supports the opinion and the quality of the explanation provided;
8  the consistency of the medical opinion with the record as a whole; [and] the specialty of the
9  physician providing the opinion." Orn, 495 F.3d at 631.

10  Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Northington, who
11  opined in January of 2011 that (1) Plaintiff is not employable because she is not able to carry
12  out instructions or work tasks; (2) Plaintiff should avoid operating machinery, a vehicle, or
13  managing simple household tasks; and (3) Plaintiff has a complete loss of ability in 12 of the
14  16 criteria set forth in her Personality Profile. Since the opinion of Dr. Northington, was
15  contradicted by other State agency medical consultants and medical evidence of record, the
16  specific and legitimate standard applies.

17  Historically, the courts have recognized the following as specific, legitimate reasons
18  for disregarding a treating or examining physician's opinion: conflicting medical evidence;
19  the absence of regular medical treatment during the alleged period of disability; the lack of
20  medical support for doctors' reports based substantially on a claimant's subjective complaints
21  of pain; and medical opinions that are brief, conclusory, and inadequately supported by
22  medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
23  v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
24  F.2d at 604. Here, the Court finds that the ALJ properly gave specific and legitimate reasons,
25  based on substantial evidence in the record, for discounting Dr. Northington's opinion.

26  According to the record as cited to by the ALJ, Plaintiff was hospitalized in April of
27  2009, for complaints of racing thoughts, excessively increased energy, and sleep difficulty
28  after depleting psychiatric medications three months earlier. (Tr. at 231-246.) Providers

1  noted that Plaintiff responded well to medications, with improved sleep, a more organized
2  thought process, and decreased racing thoughts, and discharged her to out-patient psychiatric
3  treatment. (Tr. at 232, 245.)

4  Plaintiff was thereafter treated at Southwest Network Services of Arizona between
5  April and July 13, 2009, for a history of bipolar disorder. (Tr. at 258-286, 493, 501-503.)
6  Plaintiff reported that her condition worsened when she did not take her psychiatric
7  medications, and that she had recently worked too many hours and decompensated when she
8  ran out of psychiatric medication. (Tr. 262, 268.) Examinations revealed an anxious mood,
9  but also that Plaintiff was alert, oriented, polite, and easily distracted but redirectable, and
10 demonstrated a variable but euthymic mood; an appropriate affect; fair to good hygiene; fair
11 eye contact; normal motor activity; normal speech; occasionally rambling but logical, goal-
12 directed, relevant thought process; intact memory; fair to good attention/concentration; and
13 fair judgment. (Tr. at 258-263, 268, 273-274, 286.) Plaintiff reported significant
14 improvement with treatment, including a stable mood and only "some" trouble tracking.
15 (Tr. at 258, 260, 262-63.)

16 Dr. Van Eerd, a consultative psychologist, examined Plaintiff on July 30, 2009. (Tr.
17 at 293-98.) Plaintiff reported having a long history of bipolar disorder causing concentration
18 and thought difficulty, treated with medication, which was somewhat effective, and
19 improving following recent hospitalization. (Tr. at 293-96.) She reported caring for her
20 personal needs, performing basic housework, preparing simple meals, tending to a pet cat,
21 operating a computer, shopping independently, and attending support group meetings. (Tr.
22 at 294.) She denied exertional difficulties in walking, standing, sitting, or lifting. (Tr. at
23 294.) Examination revealed that Plaintiff demonstrated anxiety, labile mood and affect, and
24 distractibility, but also that she was oriented, and demonstrated neat grooming; eye contact;
25 friendly social interaction; appropriate mannerisms; fast, pressured but articulate speech of
26 normal volume; concrete but logical associations; and fair cognitive capacity. (Tr. at 293-
27 296.) Dr. Van Eerd concluded that Plaintiff had fair ability to manage basic information and
28 instruction; variable, fair ability to attend and concentrate; and fair ability to interact socially;

1 and that she could perform simple tasks with continued compliance to treatment. (Tr. at
2 297.)

3 As documented by the ALJ, Plaintiff continued treatment at Southwest Network
4 Services between August and November of 2009. (Tr. at 363-68.) Plaintiff and her spouse
5 reported continued improvement. (Tr. at 363.) Examinations revealed that Plaintiff was alert
6 and demonstrated a euthymic mood; an appropriate affect; good hygiene; normal motor
7 activity; essentially normal speech; goal-directed thought process; intact memory; good
8 attention/concentration; and fair judgment. (Tr. at 363-64, 367-68.)

9 Kathleen Smerko, a nurse practitioner, evaluated Plaintiff in February of 2010, to
10 determine Plaintiff's fitness for reinstatement of her nursing license. (Tr. at 432-34.)
11 Plaintiff reported that she was aware of her pattern of inconsistent treatment for her bipolar
12 disorder, and that she was "eager" to return to nursing. (Tr. at 432.) Examination revealed
13 that Plaintiff was alert, oriented, neat, and pleasant, and demonstrated an appropriate affect,
14 the absence of mood lability, unremarkable eye contact, normal speech, intact memory, and
15 intact judgment, and presented no symptoms of depression or anxiety. (Tr. at 432-33.) She
16 also noted that Plaintiff had a history of stopping psychiatric treatment resulting in a return
17 of manic symptoms, and would thus be unable to function as a "practitioner." (Tr. at 434.)

18 Brent B. Geary, Ph.D., a consultative psychologist, examined Plaintiff on March 1,
19 2010. (Tr. at 381-85.) Plaintiff reported a history of bipolar disorder currently treated with
20 medication with reasonably good control. (Tr. at 383, 385.) She also reported reading,
21 tending to a pet cat, driving an automobile, assisting her mother in housecleaning, and
22 attending church services and other church activities. (Tr. at 384.) Examination revealed
23 that Plaintiff was nervous, but also that she was oriented and well groomed, and
24 demonstrated a normal sensorium, satisfactory eye contact, normal motor activity, cordial
25 social interactions, normal speech, intact short-term recall, satisfactory attention span and the
26 ability to focus, logical associations, and essentially intact judgment. (Tr. at 381-382.)
27 Plaintiff reported a happy mood, and denied current thought and perception abnormalities,
28 but also reported a lack of motivation or drive. (Tr. at 382, 385.) Dr. Geary ultimately

1 diagnosed currently moderate bipolar disorder with psychosis during manic episodes. (Tr. at 384.) He concluded that Plaintiff was not limited in her abilities to understand or remember information, or to get along with coworkers and supervisors; that she was moderately and episodically severely limited in her ability to sustain concentration and persistence in tasks; that she was moderately limited in her ability to deal with the public; and that she was severely limited in her ability to maintain regular attendance due to episodic manic events and generally poor ability to tolerate work stress. (Tr. at 385-86.)

On March 10, 2010, Jonathan Zuess, M.D., a state agency psychiatrist, determined that Plaintiff was able to carry out simple and detailed instructions, follow simple work-like procedures, make simple work-related decisions, interact with others, and respond to basic work setting changes, with mild to moderate limitations in her abilities to sustain attention for extended periods, perform at a consistent pace, and maintain a regular work schedule. (Tr. at 404.)

Again, according to the record and set forth in the ALJ's decision, Plaintiff continued treatment at Southwest Network Services between December of 2010 and February of 2011. (Tr. at 461-82, 532-34.) Examinations revealed that Plaintiff was alert and oriented, and demonstrated a euthymic mood; an appropriate affect; good hygiene; good eye contact; normal motor functioning; normal speech; a logical, goal-directed thought process; fair to good attention/concentration; intact memory; and fair to good judgment. (Tr. at 462, 464-46, 472, 474-75, 477-78, 480, 532-33.) Plaintiff reported that she was improved with treatment, including mood and thought, but lacked motivation. (Tr. at 462, 469, 474, 477, 532.) She also reported that she was working in the house, cooking, and attending church, and that she desired to return to working full time as a licensed practical nurse. (Tr. at 477, 479.) Plaintiff was determined to be psychiatrically stable and without evidence of mania, hypomania, or psychosis. (Tr. at 467, 469, 472, 475, 477-78, 481, 533.)

In January of 2011, Dr. Northington, a consultative vocational analyst, evaluated Plaintiff to "assess her employability." (Tr. at 436-43.) Dr. Marshall reported that Plaintiff was not employable due to her extreme loss in the following areas of ability: (1) to attend to

1  daily activities; (2) the deterioration in personal habits; (3) to maintain concentration, pace
2  and attention for extended periods of at least 2 hours; (4) to sustain a routine without special
3  supervision; (5) to perform activities within a schedule, maintain regular attendance, and be
4  punctual; (6) respond appropriately to supervision; (7) respond appropriately to co-workers;
5  (8) respond to customary work pressures; (9) respond appropriately to changes in the work
6  setting; (10) use good judgment on the job; (11) perform complex, repetitive, or varied tasks;
7  and (12) behave in an emotionally stable manner.  (Tr. at 437, 444-45.)  Dr. Northington
8  noted that Plaintiff had marked loss in her ability to perform simple tasks with only one or
9  two steps, her ability to relate to others, and her understanding, carrying out, and
10 remembering simple instructions.  (Tr. at 444-45.)  Plaintiff reported that her husband fixed
11 all her meals and ensured she ate breakfast, lunch, and dinner.  (Tr. at 441.)  Dr. Northington
12 indicated that Plaintiff's Bipolar disorder appeared to have a six-month cycle between her
13 episodes of manic behavior and her depressive episodes and that Plaintiff would likely be
14 absent from work more than four days per month as a result of her impairments.  (Tr. at 441,
15 445.)

16       In his evaluation of the objective medical evidence, the ALJ first addressed Dr. Van
17 Eerd's assessment, noted above, and found that Dr. Van Eerd's opinion was consistent with
18 the greater objective medical evidence of record.  (Tr. at 23.)  The ALJ gave "great weight"
19 to Dr. Van Eerd's opinion.  (Tr. at 23.)

20       Then, the ALJ discussed Kathleen Smerko's findings set forth in her Psychiatric
21 Evaluation.  (Tr. at 23.)  The ALJ gave "little weight" to Ms. Smerko's opinion stating that
22 the findings set forth therein are not relevant to the ultimate issue of disability.  (Tr. at 23.)
23 The ALJ agreed with Ms. Smerko's conclusion, however, that Plaintiff is not capable of
24 performing her past relevant work at this time.  (Tr. at 23.)

25       Next, the ALJ addressed Dr. Geary's opinion giving it only "partial weight."  (Tr. at
26 23.)  Specifically, the ALJ found that while Dr. Geary had the opportunity to review
27 Plaintiff's medical records and meet her, some of his opinions were ambiguous.  (Tr. at 23.)
28 As an example, the ALJ noted that, at times, Dr. Geary indicated that Plaintiff's limitations

1   were "moderate" and during times of manic episodes her limitations were "severe" - yet these
2   words were never defined in Dr. Geary's opinion. (Tr. at 23.)

3   In his evaluation of Dr. Zuess's opinion, the ALJ stated, "[t]he opinion of the State
4   agency reviewing physician was given great weight in this case based on its consistency with
5   the greater objective medical evidence of record, particularly regarding the assessment that
6   the claimant can perform simple, unskilled tasks (Exhibit 15F). Furthermore this physician
7   had the opportunity to review the medical record in its entirety, up to that point." (Tr. at 24.)

8   Lastly, the ALJ spent the majority of his discussion of the objective medical evidence
9   examining Dr. Northington's opinion. (Tr. at 24.) The ALJ found, as follows:

> The undersigned gives this opinion little weight because the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. Dr. Northington did not have the benefit of reviewing the other medical records contained in the current record either. Furthermore, his opinion is not even consistent with the claimant's testimony and statements. For instance, while Dr. Northington indicated the claimant should avoid driving a vehicle and performing household tasks, as well as having an "extreme loss" in the area of daily activities (including ability to attend church), the claimant has reported driving a vehicle as well as being capable of performing simple household tasks. In addition, she testified she attends church activities, including bible studies several times per week. ... Furthermore, the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

19  (Tr. at 24.)

20  The ALJ concluded his discussion of the objective medical evidence stating that the
21  residual functional capacity assessment is supported by the opinions of Dr. Van Eerd, Dr.
22  Zuess (the reviewing physician for the State agency), and Dr. Geary. (Tr. at 25.) He added
23  that the other objective medical evidence found in the medical record lends further support
24  to the residual functional capacity. (Tr. at 25.) The ALJ stated, "[t]reatment records show
25  when the claimant is compliant with medications, her symptoms are relatively mild and
26  stable. While the objective medical evidence of record supports that the claimant has
27  limitations, it also shows these limitations are not ultimately disabling." (Tr. at 25.)

1   The Court finds that the ALJ did not err in his assessment of Dr. Northington's
2   opinion. Initially, as the ALJ noted in his decision, Plaintiff did not seek treatment from Dr.
3   Northington, but rather to assess her employability. Thus, to the extent that Dr.
4   Northington's opinion is vocational in nature, it was based upon Dr. Northington's own
5   assessment of Plaintiff's mental condition, rather than upon the effects of given limitations
6   on Plaintiff's occupational base, or the extent of erosion of her occupational base caused by
7   such limitations. Further, to the extent Dr. Northington's opinion was construed as a medical
8   opinion, the Court finds that the ALJ properly gave specific and legitimate reasons based on
9   substantial evidence in the record for rejecting said opinion finding that Dr. Northington's
10  conclusions were uncorroborated and inconsistent with the objective medical evidence.

11  **C.      Non-Expert Letters and Vocational Testimony**

12  Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons
13  for discrediting her non-expert letters; and failing to utilize any vocational evidence or
14  testimony to determine that Plaintiff is able to work in other occupations. Plaintiff alleges
15  that the ALJ discredited her non-expert letters giving them "little weight" but provided
16  nothing specific as to why he did so. Plaintiff claims that the ALJ's failure to provide
17  specific criticism of each non-expert letter is reversible error. In addition, Plaintiff argues
18  that the ALJ determined that she is able to work in other occupations, but did so without the
19  vocational evidence that is required to support that finding.

20  Regarding the non-expert letters, Plaintiff takes issue with the amount of discussion
21  the ALJ employed in evaluating several non-expert letters submitted by her family and
22  friends. It is undisputed that:

> In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Indeed, lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment. Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006) (internal citations and quotations omitted).

- 16 -

Contrary to Plaintiff's belief, the record demonstrates that the ALJ did, in fact, consider each of the non-expert letters finding them wholly consonant with Plaintiff's subjective complaints, which the Court has addressed previously in this discussion. (Tr. at 24-25, 169-76, 449-59.) Notably, the ALJ also found that some statements set forth in the letters were inconsistent with Plaintiff's actual allegations. (Tr. at 24-25.) Specifically, he found that some statements addressing Plaintiff's pain and limitations were actually more severe than Plaintiff's own testimony. (Tr. at 24-25.) The ALJ found that these statements were not supported by the "greater objective medical evidence of record" and, therefore, assigned them little weight.[3] (Tr. at 24-25.) The Court finds no error.

As to the ALJ's failure to utilize any vocational evidence, at step five, the burden shifted to the Commissioner to show that Plaintiff could engage in gainful employment in the national economy. See Reddick, 157 F.3d at 721. The Commissioner can make this showing in one of two ways. First, a vocational expert can be called to evaluate a factual scenario and testify about "what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (internal citation omitted). Second, the Grids can be used to determine if a particular claimant is capable of performing certain kinds of work in significant numbers in the national economy. See id. According to the Ninth Circuit:

> The [G]rids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment. They may be used, however, only when the [G]rids accurately and completely describe the claimant's abilities and limitations. When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the [G]rids are inapplicable. In such instances, the Secretary must take the testimony of a vocational expert, and identify specific jobs within the claimant's capabilities.

---

[3] In any event, even if the ALJ erred in failing to properly discuss the non-expert letters, the Court finds that no reasonable ALJ, when fully crediting the evidence, could have reached a different disability determination. See Stout, 454 F.3d at 1056.

- 17 -

Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (internal quotations and citations omitted).

Non-exertional limitations that are not covered by the Grids are those that limit an individual's ability to work "without *directly* affecting his or her strength, ... Examples of non-exertional limitations are mental, sensory, postural, manipulative, or environmental (e.g. inability to tolerate dust or fumes) limitations." Desrosiers, 846 F.2d at 579. However, "[i]t is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines." Id. at 577.

This Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff's non-exertional limitations were severe enough to require the testimony of a vocational expert. Rather, this Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Based on the evidence of record, the ALJ determined that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupation base of unskilled work at all exertional levels." (Tr. at 26.) The ALJ then concluded that a finding of "not disabled" is appropriate under the framework of section 204.00 in the "Medical-Vocational Guidelines." (Tr. at 26.) In so finding, the ALJ explained the applicability of the Grids because Plaintiff's non-exertional limitations were not sufficiently severe so as to prevent her from performing a full range of work. (Tr. at 26.)

Having made these findings based upon careful consideration of the entire record, the ALJ was not required to take the testimony of a vocational expert as to whether Plaintiff could perform work in the national economy. The Court finds no error.

## V. CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case. The ALJ properly discredited Plaintiff's credibility

1  providing clear and convincing reasons supported by substantial evidence; the ALJ provided
2  specific and legitimate reasons, based on substantial evidence, for discounting the opinion
3  of Dr. Northington; the ALJ provided legally sufficient reasons for discrediting Plaintiff's
4  non-expert letters; and the ALJ was not required to utilize vocational evidence to determine
5  that Plaintiff is able to work in other occupations.  Consequently, the ALJ's decision is
6  affirmed.

7  Based upon the foregoing discussion,

8  **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
9  Security be affirmed;

10  **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
11  accordingly.  The judgment will serve as the mandate of this Court.

12  DATED this 29th day of October, 2013.

Michelle H. Burns
United States Magistrate Judge